695 A.2d 323

JULIO ESTRADA AND RITA ESTRADA, HIS WIFE, PLAINTIFFS–APPELLANTS, v. HENDRICKSAW CORP., LARRY LEVINSON, JARED LEVINSON, ACME PLASTICS INC., PETER CADORETTE, SHINKO TRADING COMPANY, THAWED, JOHN DOE (A FICTITIOUS NAME), RICHARD ROE (A FICTITIOUS NAME), ABC CORP. (A FICTITIOUS CORP.) AND CONTINUING ALPHABETICALLY THROUGH XYZ CORP. (ALL OF WHICH ARE FICTITIOUS NAMES), DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued May 28, 1997—Decided June 20, 1997.

Before Judges PRESSLER, STERN and WECKER.

*Kenneth A. Berkowitz* argued the cause for appellants (*Blume, Goldfaden, Berkowitz, Donnelly, Fried & Forte,* attorneys; *Mr. Berkowitz,* on the brief and reply brief).

*Deborah M. Mulvey* argued the cause for respondents Acme Plastics, Larry Levinson, Jared Levinson and Peter Cadorette (*Bumgardner, Hardin & Ellis,* attorneys; *William R. Bumgardner,* of counsel; *Ms. Mulvey,* on the brief).

The opinion of the court was delivered by

STERN, J.A.D.

■ Our workers' compensation statute provides that "[i]f an injury or death is compensable ..., a person shall not be liable to anyone at common law or otherwise on account of such injury or death for any act or omission occurring while such person was in the same employ as the person injured or killed, except for intentional wrong." *N.J.S.A.* 34:15-8 (second paragraph). As a result, a "co-employee" of an injured worker entitled to workers' compensation is ordinarily immune from common-law or other actions by the injured worker. *See, e.g., Maggio v. Migliaccio,* 266 *N.J.Super.* 111, 115-16, 628 *A.*2d 814 (App.Div.), *certif. denied,* 134 *N.J.* 563, 636 *A.*2d 521 (1993); *Linden v. Solomacha,* 232 *N.J.Super.* 29, 556 *A.*2d 346 (App.Div.), *certif. denied,* 117 *N.J.* 88, 563 *A.*2d 847 (1989). The issue presented by this appeal is whether the injured worker and responsible co-employee must both have been working for the common employer at the time of the act or omission giving rise to plaintiff's injury.

Plaintiff alleges that he was seriously injured while working on a computerized saw at the plant of his employer, Acme Plastics, Inc. (Acme). He was hired by Acme following the termination of defendant Peter Cadorette. Plaintiff alleges that the accident occurred because Cadorette improperly removed a safety device from the saw before the termination of his employment with Acme.

Following disposition by trial of plaintiff's claims against the saw's manufacturer and distributor, plaintiff appeals from interlocutory orders denying his motion to strike the "fellow employee" defense and granting defendant Cadorette's motion for summary judgment dismissing the complaint against him.[1] Plaintiff argues that since the acts of defendant Cadorette were not committed "while" he was in the same employment as plaintiff, the "fellow

---

[1] Plaintiff's wife sued *per quod.* We refer to the injured employee as plaintiff. At argument before us, plaintiff acknowledged that he does not challenge the dismissal of his complaint against Acme.

employee" or "co-employee" immunity of *N.J.S.A.* 34:15–8 does not apply. We disagree and affirm.

For purposes of plaintiff's motion we must accept his assertion that approximately a year before the accident, Cadorette, a supervisor at Acme, allegedly removed the safety tape from the computerized saw on which plaintiff was injured. Plaintiff insists that he was "not in the same employ when Mr. Cadorette wrongfully removed the saw's safety tape." Cadorette was employed by Acme from 1983 until November 1988. Plaintiff was hired in March 1989 and the accident occurred two and a-half months later on May 31, 1989. Plaintiff contends that the "co-employee" immunity only applies if both he and Cadorette were simultaneously employed by the common employer at the time of the "act or omission" giving rise to the injury..

Plaintiff reads *N.J.S.A.* 34:15–8 literally and contends that the immunity applies only to "an act or omission occurring while such person was in the same employ as the person injured. . . ." Plaintiff presses the significance of the word "while."

In our view, the fact that both Cadorette and plaintiff worked for a common employer at the time of their respective conduct requires the immunity to apply. Certainly the legislation was designed to provide a workers' compensation remedy and, in exchange, to protect the employer and co-employee from common-law or other liability. And there is no reason to suggest that Cadorette did not perform his acts "in the course of" his employment in terms of the act which allegedly caused the accident.

The second paragraph of *N.J.S.A.* 34:15–8, quoted above, was adopted in 1961. As a result, the employer's immunity for work related accidents was extended to the co-employee. *See Volb v. G.E. Capital Corp.*, 139 *N.J.* 110, 117, 651 *A.*2d 1002 (1995); *Boyle v. Breme*, 93 *N.J.* 569, 461 *A.*2d 1164 (1983).

In *Thornton v. Chamberlain Manufacturing Corp.*, 62 *N.J.* 235, 300 *A.*2d 146 (1973), a petitioner, whose employment was terminated nine days before, was attacked by a co-employee who petitioner

had supervised. The Supreme Court held the petitioner, although a former employee at the time of assault, was entitled to workers' compensation benefits because "[t]he attack obviously had its genesis in the employment...." *Id.* at 237, 300 *A.*2d 146. The "accident" was deemed to "arise out of" the employment because it would not have occurred "but for" petitioner's job with the employer. *Id.* at 239, 300 *A.*2d 146. The Court also found that the "accident" occurred "in the course" of petitioner's employment because "it had its origin there in the sense that it was the end-product of a force or cause set in motion in the course of employment." *Id.* at 242, 300 *A.*2d 146.

While *Thornton* dealt with whether a former employee was entitled to benefits under *N.J.S.A.* 34:15–7, its rational is applicable here because the workers' compensation law affords a remedy for a worker whose injuries are caused by a person whose conduct occurred "in the course" of his employment with the same employer. By the same token, that person must be immune from suit for such conduct. We thus conclude that the rationale of *Thornton* provides an immunity because the accident had its "genesis" in the common employment.

The fellow workers' employment need not be simultaneous for purposes of the immunity. As Professor Larson has said:

> The reason for the employer's immunity is the *quid pro quo* by which the employer gives up his normal defenses and assumes automatic liability, while the employee gives up his right to common-law verdicts. This reasoning can be extended to the tortfeasor coemployee; he, too, is involved in this compromise of rights. Perhaps, so the argument runs, one of the things he is entitled to expect in return for what he has given up is freedom from common-law suits based on industrial accidents in which he is at fault.

> [2 Arthur Larson, *Workers' Compensation,* § 72.22 (1997).]

Thus, the co-employee is immune for his conduct occurring "in the course of his employment." *Id.* § 72.23; *see also Konitch v. Hartung,* 81 *N.J.Super.* 376, 195 *A.*2d 649 (App.Div.1963), *certif. denied,* 41 *N.J.* 389, 197 *A.*2d 15 (1964); *Thering v. Reinkemeyer,* 117 *N.J.Super.* 176, 181, 283 *A.*2d 923 (Law Div.1971). That the person who ultimately was injured had not been hired when the

negligent act occurred "in the course" of defendant's employment does not affect the policy behind the immunity.

The judgment is affirmed.